M. SHYER and others *vs.* LOCKHARD & IRELAND and others..

April Term, 1875.

TRUST FUND—LIMITATION OF ACTION—CESTUIS QUE TRUST.—Where a con-- veyance of goods in trust for creditors was made in December, 1866, and the trustee qualified according to law, but before he could take possession of the goods, they were attached by the defendants, sold under the orders of the court in the attachment cases, and the money loaned to the defendants on the: 4th of March, 1867, who executed notes with security, payable to the clerk, for the amount, and the attachments were afterwards, in January, 1873, declared void, and the suits dismissed, and this bill was filed on the 10th of ' February, 1873, by the beneficiaries in the trust deed, to have the notes. collected and the proceeds distributed under the deed; it was held, on. demurrer, that the action was not barred by the statute of limitations, and. was maintainable.

*H. H. Harrison,* for complainants.
*M. M. Brien, jr.,* for defendants.

THE CHANCELLOR:—Bill filed 10th of February, 1873, by complainants on their own behalf, and on behalf of all other creditors of Joseph Lowenheim, secured by a deed of ' trust made by said Lowenheim to Max Dunkenspiel, on the 19th of December, 1866, in trust for creditors therein pro- vided for, in a certain order of priority. The bill, after stating the execution of the deed aforesaid, and the prefer-- ences therein made, alleges that Dunkenspiel, the trustee,.

qualified according to law, but that, before he could take possession of the stock of goods conveyed, the defendants Lockhard & Ireland and Schradski commenced their suits at law against Lowenheim, and on the same day sued out ancillary attachments in each suit, which were levied upon the goods in question, by the sheriff, who, under the orders of the court in said cause, sold said goods, and paid the proceeds to the defendant Love, as clerk of said court. That Love, by order of said court, loaned out the fund, on the 4th of March, 1867, $1,025 to Lockhard & Ireland, and $483.55 to Schradski; that, on the same day, Lockhard & Ireland executed their note to said Love, as clerk, for the amount so borrowed, with Schradski and defendant M. M. Brien, jr., as sureties, and Schradski executed his note for the amount borrowed, with Lockhard & Ireland and M. M. Brien, jr., as sureties, which notes are still in the possession of Love. That afterwards such proceedings were had in these causes that, upon appeal to the supreme court, these attachments were declared, in January, 1873, to be null and void. That Dunkenspiel, the trustee, has removed from the state. The bill asks that a new trustee be appointed, if necessary, or the trust administered by this court, and that the fund secured by said notes be collected and distributed to the creditors entitled under the trust deed, and that the defendants who had the same attached be held liable for the difference between the actual value of the goods so attached and the proceeds of their sale by the sheriff, and for general relief.

The defendants have demurred to the whole bill, assigning various causes of demurrer. The first cause is that the bill fails to state that the trust conveyance was *bona fide*, and accepted by the complainants. But the bill does allege that the trustee qualified as such according to law, which would be clearly an acceptance of the trust, rendering a separate acceptance by each beneficiary unnecessary. *Halsey* v. *Whitney*, 4 Mason, 214. The law, moreover, would presume acceptance in the absence of anything to the con-

trary, as it certainly presumes that the deed was made *bona fide* for the purposes intended, the deed having been legally executed and formally accepted. *Furman* v. *Fisher*, 4 Coldw. 626; *Washington* v. *Ryan*, Sup. Ct. Tenn., January term, 1876.

The second exception is that, the trustee having qualified, the right of action was in him to sue for a conversion, and not having done so for three or six years, the right of action is barred by the statute. This objection strikes me as perhaps well taken, so far as the original conversion by the seizure in 1866, under the attachments at law, is concerned. That seizure might have been treated as a conversion, and any action based upon that ground would certainly be barred, and the *cestuis que trust* could stand in no better position in this regard than the trustee. But the parties might waive the conversion, and follow the goods or their proceeds, as trust property, in whosesoever hands they might come. Each transfer of the goods or of the proceeds would be a new wrong, for which the parties would have their remedy against the wrong-doer. The trustee and the beneficiaries under the trust deed might demand the proceeds of sale after they came to the hands of Love, and follow them, so long as they could be traced, into whosesoever hands they might come. These funds, it appears, were loaned on the 4th of March, 1867, and the notes mentioned in the bill taken therefor. Love was a mere stakeholder, holding, subject to the orders of the court, for whom it might concern. If the court subsequently declined to take jurisdiction of the fund, the parties entitled to the same had a right to claim it, and the statute would not run against them so long as there was no adverse holding. The makers of the notes would not be protected by the statute until the right of action of Love, as having the legal title, was barred, and, until the bar fully attached, any person having an equitable right to the funds might assert the same in this court. As six years had not elapsed from the execution of the notes to the filing of this bill, the bar

of the statute had not attached at this latter date. Whether any, and what, steps were necessary to prevent the statute from continuing to run thereafter, it is not now necessary to decide.

The third ground of demurrer is that the only remedy is through the trustee, who is shown to have qualified according to law. But this is clearly not the law, the *cestuis que trust* being always entitled to come into equity to assert their rights under the trust deed, even if the trustee neglect his duty. *Weir* v. *Tannehill*, 2 Yerg. 57. If the trustee be barred of his action, the *cestui que trust* is also. But, as we have just seen, neither was barred at the filing of the bill, so far as the notes in controversy are concerned.

The fourth ground is that the trustee abandoned the proceedings in the circuit court, and Lowenheim tacitly admitted that he had fraudulently disposed of, or was about to fraudulently dispose of, his property. But these facts, if true, would not affect the right of the *cestuis que trust*. The bill shows, however, that the court refused to allow the trustee to intervene to assert his rights, and that Lowenheim successfully contested the attachments.

Lastly, it is no answer to this suit that the complainants have a remedy against the trustee and Lowenheim, for such remedy would not be inconsistent with their right to the trust fund.

Overrule the demurrer.